D. C. DALEY ET AL. V. WILLIAM T. PETERS.

FILED APRIL 7, 1896.   No. 6487.

1. Executions: EXEMPTIONS: APPRAISEMENT: DUTY OF OFFICER. When an officer seizes property under execution or attachment, and the debtor makes and files an inventory under oath in accordance with section 522 of the Code of Civil Procedure, the officer then has but one duty to perform, and that is to call appraisers and have the property levied upon appraised, and, if the appraised value of the property is five hundred dollars or less, release and return the property to the debtor.

2. ————: ————: UNLAWFUL SALE: CONVERSION. Where an officer makes a levy upon personal property, and the debtor files under oath the inventory required by section 522 of the Code of Civil Procedure, and the officer neglects or refuses to cause the property to be appraised, but proceeds to sell it to satisfy his writ, he is thereby guilty of the conversion of the property.

3. ————: ————: AFFIDAVIT: CONVERSION. Where, in such case, the officer is sued for the conversion of such property, the fact that the averments, or any of them, in the

affidavit attached to the inventory were false, affords him no defense to the action.

4. ———: CONVERSION: DAMAGES. The only issue available in such an action is the value of the property wrongfully converted. *Smith v. Johnson*, 43 Neb., 754, and *Bender v. Bame*, 40 Neb., 521, reaffirmed.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*B. N. Robertson*, for plaintiffs in error.

No appearance for defendant in error.

RAGAN, C.

Before a justice of the peace in Douglas county one McCargar obtained a judgment against William T. Peters for $19.25. An execution was issued on this judgment and delivered to one Daley, a constable, and he levied the same upon a horse and wagon and buggy and some harness belonging to Peters. Thereupon Peters filed with the justice of the peace an inventory, under oath, of the whole of the personal property owned by him, as required by section 522 of the Code of Civil Procedure. The constable, however, disregarded the inventory and neglected and refused to call appraisers and have the personal property of Peters appraised, as provided by said section of the Code, and sold all the property levied upon under his execution. The constable then made return on his execution that he had received $97 in money for the property sold; that he had disbursed of that money $50 in discharging a chattel mortgage lien upon the property; paid $12 for feeding the horse, $3.25 for storing the buggy, $1.50 for expressage, $2.91 commission, $2 for ad-

58

vertising, $2 for a clerk, $2.40 for his fees, and turned in to the justice $20.94 to apply on the judgment.   Peters then brought this suit in the district court of Douglas county against Daley and the sureties on his bond for the conversion of the property levied upon and sold by the constable.   Peters had a verdict and judgment and defendants prosecute to this court a petition in error.

The inventory filed by Peters with the justice recited that it was an inventory of the whole of the personal property owned by him, and that he was a resident of the state of Nebraska, the head of a family, and that he had neither lands, town lots, nor houses subject to exemption as a homestead.   This inventory was duly signed and sworn to by Peters.   It is now insisted that the judgment of the district court must be reversed because the answer alleges that Peters, at the time he made and filed the inventory, was possessed of and in possession of a homestead in Douglas county, and that the reply does not deny this. Section 521 of the Code of Civil Procedure provides: "All heads of families who have neither lands, town lots, or houses subject to exemption as a homestead under the laws of this state, shall have exempt from forced sale on execution the sum of $500 in personal property." Section 522 of the Code provides: "Any person desiring to avail himself of the exemption as provided for in the preceding section must file an inventory, under oath, in the court where the judgment is obtained, or with the officer holding the execution, of the whole of the personal property owned by him. *   *   * And it shall be the duty of the officer to whom the execution is directed to call to his

assistance three disinterested freeholders of the
county where the property may be, who, after
being duly sworn by said officer, shall appraise
said property at its cash value." If it be true that
Peters owned a homestead exempt from execution
under the laws of the state at the time he made
and filed the inventory herein, is that a defense
for Daley in this action? What was the duty of
Daley, the constable, holding the execution when
this inventory was filed? In *People v. McClay*, 2
Neb., 7, a debtor filed an inventory of all his per-
sonal property as required by said section 522 of
the Code of Civil Procedure. The officer refused
to call appraisers, as required by the statute,
and have the property appraised. The execution
debtor then applied to this court for a writ of
*mandamus* to compel the officer to call appraisers
and have the property mentioned in the inventory
filed by the judgment debtor appraised. The offi-
cer made answer to the alternative writ that the
execution debtor, though the head of a family,
was an alien, not a resident of the state. The
court held that the answer was entirely insuffi-
cient and awarded the writ prayed for. LAKE, J.,
speaking for the court, said: "The relator filed an
inventory of all his personal property as required
by section 522 of the Code of Civil Procedure.
* * * This done, the respondent had but one
course to pursue. This was to call three disinter-
ested freeholders of the county and have them ap-
praise the property," etc. *State v. Cunningham*,
6 Neb., 90, was a *mandamus* proceeding in this
court to compel a sheriff to call freeholders and
cause certain personal property levied upon by
him to be appraised, the execution debtor hav-
ing filed the inventory required by section 522 of

the Code of Civil Procedure. The opinion does not disclose what reason the sheriff alleged as an excuse for failing to comply with the mandates of the statute. The court awarded the writ as prayed, MAXWELL, J., saying: "In the case of *People v. McClay*, 2 Neb., 8, it was there held that when an inventory, under oath, was filed with the officer he had but one course to pursue, and that was to call three disinterested freeholders of the county and have them appraise the property. * * * We approve of that decision. The officer cannot question the correctness of the inventory. If the debtor has real estate which is exempt under the homestead law, or other personal property than that contained in his list, such personal property is liable to be seized for his debts and he may be prosecuted for perjury. But when an inventory under oath is made by the debtor and filed with the officer holding the execution * * he must call appraisers to ascertain the value of the property seized. He has no discretion in the matter." In *Kriesel v. Eddy*, 37 Neb., 63, a constable of Douglas county levied an execution upon certain goods of Kriesel, who thereupon filed an inventory under oath with the justice of the peace before whom the judgment was rendered, reciting that he was the head of a family, etc., and that he had no other property except the goods which had been seized by the constable. The constable refused and neglected to cause the property levied upon to be appraised, but proceeded and sold it under the execution. Kriesel then sued the constable and his bondsmen for the conversion of the property. On the trial of the case the district court permitted evidence to go to the jury to contradict the averments of the affidavit attached to

Kriesel's inventory; that he was the head of a family and a resident of the state, and at the close of the testimony directed a verdict for the defendant. This judgment on proceedings in error here was reversed, the court, through RYAN, C., saying: "Upon the filing of such an affidavit containing an inventory of all the property owned by Kriesel, the law devolved upon the constable holding the execution but one course of action, and that consisted in his calling three disinterested freeholders of Douglas county to appraise said property levied upon at its cash value.*  *  * In this case the constable ignored the affidavit containing the inventory and sold all the property which he held under his execution. This rendered him liable for the fair value of said property, at least to the amount of $500, and there was no issue in the district court properly triable except such value. Officers holding executions should act under the statutes as well to protect the judgment debtor in the enjoyment of the exemption provided by statute as to collect the judgment upon which the execution issued. Such officers may, by arbitrarily overriding the statute, prevent the beneficent operation of the exemption law in favor of the debtor. This is but one species of oppression in office, for which such officers as are guilty will be held liable to strict accountability if their victims are able to apply to the courts for redress." *Bender v. Bame*, 40 Neb., 521, was a suit against an officer for conversion of certain personal property. The execution debtor, at the time the property was levied upon, filed an inventory under oath as required by the provisions of section 522 of the Code of Civil Procedure. The officer refused and neglected to make any appraisement and sold the

property.    NORVAL, C. J., speaking for the court,
said: "That the officer did not cause an appraise-
ment to be made is no fault of the defendant in
error [judgment debtor].    All the law required of
him was to make and file with the justice an in-
ventory under oath of his personal property, and,
after the appraisement has been made, to select
therefrom property to the amount of the statutory
exemption.    It is the well settled law of the state
that exemption laws are to be construed liberally
to the end that the purpose for which they were
adopted may be accomplished.    After the debtor
has complied with the law on his part he ought
not to be deprived of his exemption by the failure
of the officer to perform his duty.    To hold, when
exempt property has been seized under execution
and the proper inventory has been filed, that an
action for conversion will not lie, where the officer
fails or refuses to make an appraisement, would,
in many cases, destroy the value of the exemption
by preventing the debtor from deriving any bene-
fit from it."    And in *Smith v. Johnson*, 43 Neb., 754,
where all the cases cited above were reviewed,
this court held: "It is without the province of an
officer holding property under levy of writ, pend-
ing sale by order of the court in attachment pro-
ceedings, to question the validity or sufficiency of
a schedule and affidavit made according to the
provisions of the statute governing such proceed-
ings and filed by the attachment debtor for the
purpose of setting aside the property levied upon
as exempt."    These cases, then, establish the fol-
lowing propositions: (1.) That when an officer
seizes property under execution or attachment
and the debtor makes and files an inventory under
oath in accordance with the provisions of section

522 of the Code of Civil Procedure, the officer then has but one duty to perform, and that is to call appraisers and have the property levied upon appraised; and if the appraised value of the property is $500 or less, to release and return it to the debtor. (2.) Where an officer makes a levy upon personal property and the debtor files under oath the inventory required by said section of the Code, and the officer neglects or refuses to cause the property to be appraised and proceeds to sell it to satisfy his writ, that he is thereby guilty of a conversion of the property. (3.) And when sued for a conversion of such property the fact that the averments, or any of them, in the affidavit attached to the inventory were false affords him no defense to the action. (4.) The only issue available in such action is the value of the property wrongfully converted.

If an officer holding an execution may arbitrarily disregard his duties as prescribed by the statute, and, notwithstanding an inventory under oath be filed by the debtor as required by the statute, refuse and neglect to cause the property to be appraised and sell it, then the very object and purpose of these wise and beneficent exemption laws will always be thwarted. It has been well said: "The common law had no favors to offer the debtor or his family in the way of exempting any portion of his property from execution for the benefit of his family; and if he owned two gowns one might be seized and sold. Modern legislation has removed this reproach to the law and there is probably no state or civilized country in the world in which some kind of an exemption is not now allowed. These statutes are designed as a protection for poor and destitute families and

the law thus seeks to mitigate the consequence of
the husband's thoughtlessness and improvidence.
They are based upon considerations of public
policy and humanity and should be liberally con-
strued." (7 Am. & Eng. Ency. of Law, p. 130.)

It is no concern of a constable or sheriff whether
an affidavit attached to an inventory filed by a
debtor be true or false. If it is false, the debtor
may be prosecuted for perjury. That is a matter
between him and the state of Nebraska. The law
has not committed to the sheriffs and constables
of the state the authority or the duty to inquire
into the truth of the averments of the affidavit
attached to an inventory filed by an execution or
attachment debtor.

Another argument insisted upon for the re-
versal of this judgment is, in effect, that in any
event the constable should not be charged with
the full value of the property levied upon and sold
by him, but that the judgment at least should be
credited with the amount of the mortgage on the
property which the constable paid off and dis-
charged out of the proceeds of the sale. We have
been cited to no authority to sustain this remark-
able contention, nor do we think any can be found.
The constable was a wrong-doer in everything
that he did with the property after the filing of
the inventory by Peters. If the property had been
subject to execution the constable, by selling it,
would have sold only the interest which Peters
had therein; and the purchaser at the sale would
have taken the property subject to the mortgage
lien, if any, thereon. The constable was not the
administrator, agent, or guardian of Peters. He
was not charged by the latter with the duty of
calling in the creditors of Peters and paying his

debts out of his property. Looking at the express provisions of the exemption laws of the state, their purpose and object, and liberally construing these statutes, and influenced also by considerations of public policy, we hold: Where an officer levies an execution or writ of attachment upon personal property and the debtor files an inventory under oath as required by section 522 of the Code of Civil Procedure, and such officer neglects or refuses to cause the property levied upon to be appraised, but proceeds and sells the same, and the debtor then sues him for the conversion of the property, that the courts will not permit him to urge as a defense to that action that any of the averments in the affidavit attached to the debtor's inventory were false.

The judgment of the district court is right and it is in all things

AFFIRMED.